UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JULIAN ADAMS,                    :    **CIVIL NO. 4:07-CV-1103**
                                 :
            Plaintiff            :    (Judge Jones)
                                 :
        v.                       :    (Magistrate Judge Smyser)
                                 :
CHARLES KELLAR and               :
CITY OF HARRISBURG,              :
                                 :
            Defendants           :

**ORDER**

**Background**

    This case has been referred to me to oversee the
completion of discovery and to resolve all currently pending
discovery disputes and any additional disputes that may arise.
(Docs. 69, 80).

    The amended complaint claims that defendant Charles
Kellar violated the First Amendment and Fourteenth Amendment
rights of the plaintiff.  It is claimed that the defendants
have retaliated against the plaintiff after the plaintiff had
testified in police department proceedings and after he had

later sought to redress grievances by legal actions and challenges. It claims that defendant City of Harrisburg is liable in a *Monell* claim on the basis that the Mayor of the City is aware of and condones racially discriminatory practices within the City's Bureau of Police.

The plaintiff is Julian Adams, an adult male police officer with the Harrisburg Bureau of Police. Defendant Kellar is the Chief of Police, and defendant City is the employer of Kellar.

The amended complaint avers that in October of 2003 the plaintiff was on patrol with Corporal Muldrow. Muldrow became involved in an altercation with a citizen. The plaintiff charged the citizen with aggravated assault, resisting arrest and disorderly conduct. Later, an internal affairs investigation was conducted concerning the incident. Muldrow received a disciplinary suspension arising from his conduct during the incident. The citizen filed a civil rights complaint against Muldrow and the plaintiff, alleging an excessive use of force and other civil rights violations.

2

The amended complaint avers that had the plaintiff testified in the civil action brought by the citizen against Muldrow and himself, his testimony "would have been unfavorable to the interests of the Harrisburg Bureau of Police."

The amended complaint alleges that defendant Kellar has a vendetta against Muldrow and has transferred this vendetta to the plaintiff. It alleges: "Kellar's hatred is partly based upon racism. Plaintiff is African American. Muldrow is African American."

The amended complaint avers that Muldrow filed a union grievance, that the defendants believed that the plaintiff would testify for Muldrow, that the plaintiff met with the attorney for the defendants and for the Bureau of Police and that the latter told the plaintiff that he should not testify at the hearing and that he could face charges if he were to testify at the hearing. The plaintiff did testify at the hearing. He testified truthfully. After he testified, he was subjected to a disciplinary investigation based upon the testimony that he provided. He was stripped of most of his

duties, taken off patrol and assigned a report writing

function.  These developments humiliated and embarrassed him

and retarded his career growth.  The amended complaint alleges

that the testimony was unfavorable to the City, to the Bureau

of Police and to a hidden agenda of defendant Kellar.  The

defendants initiated disciplinary action against the plaintiff

in retaliation.  The amended complaint alleges that the

plaintiff was not informed of the allegations against him or of

the result of any investigation into his conduct.  In April of

2007, the defendants told the plaintiff that if he did not

accept a two-year suspension to be followed by his retirement,

he would be terminated.  He was presented with an agreement to

that effect.  While the plaintiff was considering whether to

accept the agreement, defendant Kellar told him that he was

being terminated immediately because he had filed this civil

action.

        The amended complaint avers that non-minority police

officers have committed violations far more serious than any

committed by the plaintiff, that those violations allegedly

committed by the plaintiff have not been disclosed to the

plaintiff, that he did not commit any violation and that non-minority officers have not been treated as harshly as has the plaintiff.

The amended complaint in its concluding paragraphs states in addition to a First Amendment retaliation claim that the plaintiff was denied procedural due process and that his right to equal protection of the laws was violated.

The case management conference was held on September 27, 2007. A March 17, 2008 discovery deadline was set.

On January 22, 2008, the plaintiff's counsel wrote to the court that the defendants had not responded to an August 27, 2007 request for the production of documents and had not cooperated with the efforts of the plaintiff's counsel to set up depositions. By an Order of February 4, 2008, the court stayed all discovery upon the request of the defendants.

By an Order dated May 5, 2008, the stay on discovery was lifted. The plaintiff's procedural due process claim was

dismissed and the plaintiff's claim for punitive damages against the City of Harrisburg was dismissed.  A second joint case management plan was filed on May 22, 2008.  By Order of May 27, 2008, a January 15, 2009 discovery deadline was set. On September 11, 2008, the defendants filed an answer to the complaint.

On December 31, 2008, the defendants filed a motion for a protective order, asking the court to enter an order to forbid the plaintiff from taking the deposition of Stephen Reed, the Mayor of the City of Harrisburg.  The court conducted a conference with counsel on February 3, 2009.  On February 4, 2009, the court granted a protective order forbidding the plaintiff from deposing Mayor Reed.  The Order also extended the discovery deadline to March 13, 2009.

A discovery conference was conducted by the court on March 3, 2009.  An Order was entered by the court on that date adopting as an order of the court a confidentiality agreement submitted by the parties.

On March 23, 2009, the plaintiff's counsel wrote a letter to the court. The letter acknowledged that the discovery deadline had passed. The letter stated that the matters of concern described in the letter had not become apparent until depositions on March 18, 2009. The deposition of defendant Kellar had been taken on that date. The plaintiff's counsel asked the court to permit him to depose defendant Kellar a second time. The plaintiff's attorney had learned that "the Mayor of Harrisburg met with representatives of the [Pennsylvania Human Relations Commission], as well as city agents, to address a host of complaints against the police bureau, including complaints by officers about Defendant Kellar's racial insensitivity and disparate treatment of minority police officers." The letter stated that, "[w]e had initially requested to depose the Mayor, and, as a result of our conference in anticipation of a motion for protective order to prevent his testimony, had agreed to conduct discovery through other channels before persisting in our request to depose the Mayor. Discovery was conducted and, to be candid, Plaintiff sees no reason to persist in the request for the Mayor's deposition at this point." The March 23, 2009 letter

went on to present a request, and the reasons for the request, for plaintiff's counsel to be permitted to conduct an additional deposition of defendant Kellar and to conduct a deposition of the Executive Director of the Pennsylvania Human Relations Commission, Homer Floyd.

A conference of the court and counsel was held on April 2, 2009.  On April 19, 2009, the plaintiff filed a motion to compel discovery (Doc. 54), seeking a court order directing a second deposition of defendant Kellar and an order that redactions of names in a report supplied by the Pennsylvania Human Relations Commission be eliminated and that the names be revealed.  By Order of April 22, 2009, the court vacated all case management deadlines and scheduled a hearing for July 28, 2009.

On July 16, 2009, the plaintiff filed another motion to compel discovery, asking the court to require the deposition of Mayor Reed, to require the second deposition of defendant Kellar and to require that an unredacted Human Relations Commission report be supplied.  This motion to compel (Doc. 58)

8

was presented by the plaintiff as a supplemental motion to the motion then pending. (Doc. 54).

On July 28, 2009, the court held a hearing. No testimony was presented. Counsel for to plaintiff (Mr. Ostrowski), for the defendants (Ms. McGrath) and for the Pennsylvania Human Relations Commission (Mr. Hardiman) presented positions and argument to the court. (Doc. 66). The court ordered that the first motion to compel (Doc. 54) as supplemented (Doc. 58) be granted in part and denied in part. The court specifically ordered that no more than five focused interrogatories by the plaintiff to Mayor Reed would be permitted and that a second three hour deposition of defendant Kellar would be permitted. The order specified that the second deposition of defendant Kellar would be limited to two topics: (1) Chief Kellar's involvement in any discipline that relates to Detective Neal; and (2) any statements that are attributed to Chief Kellar by interviewees of the Pennsylvania Human Relations Commission. The court denied the plaintiff's request for unredacted documents from the PHRC revealing the names of interviewees. The court also ordered that a three hour

deposition of PHRC Executive Director Floyd would be permitted provided that the anonymity of interviewees be preserved. (Docs. 66, 65).

The Kellar and the Floyd depositions were conducted on August 6, 2009. The defendants served objections in response to the Mayor Reed interrogatories. Copies of the transcripts of the Kellar and Floyd depositions and of the objections to the Mayor Reed interrogatories have been filed. (Docs. 84, 85). Copies of the videotape recordings of the depositions have also been filed. (Doc. 86).

On August 21, 2009, the plaintiff's attorney sent a letter to the court asserting that the objections to the interrogatories to Mayor Reed were in bad faith.

By Order of September 8, 2009, the case was referred to Magistrate Judge Carlson to oversee discovery and to resolve discovery disputes. Magistrate Judge Carlson subsequently recused himself. The referral of the case was then

transferred, on October 9, 2009, to this magistrate judge to oversee discovery and to resolve discovery disputes.

On September 18, 2009, the plaintiff filed a motion to compel discovery and for sanctions, stating a request for an order requiring a further deposition of defendant Kellar and a further deposition of Homer Floyd and requesting the imposition of sanctions against the defendants or defendants' attorney and the PHRC attorney based upon the manner in which counsel for the defendants and for Mr. Floyd had conducted themselves at the August 6, 2009 depositions.  The motion of the plaintiff also requests a hearing before the court.  After an extension was granted, a brief in support of that motion was filed on October 30, 2009.  A brief in opposition was filed on November 13, 2009.  A reply brief was not filed.[1]  The motions to compel discovery and for sanctions (Docs. 58 and 73) are ripe for decision.

---

1.  On December 11, 2009, without leave of court, the plaintiff filed an untimely brief.  Doc. 87.

11

**Discussion**

We observe at the outset that the present discovery posture of this case is that the period of discovery expired and then the court granted a request of the plaintiff to reopen discovery. First, we will decide whether it is appropriate at this stage of the case to proceed by a conference as we customarily do in cases where we are managing discovery or to proceed by an order. We have thoroughly reviewed the history of discovery and of discovery disputes in this case. Although our usual approach in addressing discovery issues is to proceed by a conference, we will proceed by an order in this case because our review of the proceedings to date leads us to find that there is no longer a reason in this case to believe that counsel will address discovery issues with a shared objective of achieving a reasoned agreed resolution.[2] Thus, although our

---

2. See, for example, page 56 of the August 6, 2009 Kellar deposition:

> Mr. Ostrowski: That's why I, no no no no no no I'm not going for any informal stuff on this. We are going to court on motions in this case from here on out. No more telephone calls, no more letters to try to
> (continued...)

objective in discovery disputes is usually directed forward

towards the satisfactory completion of discovery, here we must

dissect past discovery incidents and disputes and must

determine whether there have been violations and, if so,

whether sanctions are warranted.  Only the plaintiff has filed

a motion for sanctions.  The defendants seek an end to

discovery.  The defendants have suggested, also, that sanctions

against the plaintiff's attorney are warranted.


The plaintiff has asked the court to conduct a hearing.

Having carefully reviewed the briefs, the background and

history of the case, the pleadings, the interrogatories to

Mayor Reed, the objections to the interrogatories to Mayor

Reed, the transcript of the hearing of July 28, 2009 before

Judge Jones, the transcripts of the two August 6, 2009

---

2.  (...continued)
           work it out.  I'm getting on the docket.
           I'm making a record and I'll take the heat
           from the Judge.  You know I've shown in
           court the last time that I can take it.
           I'll show it again.  That's the only way to
           get anything done.  Don't expect me to make
           your job that I consider to be a game easy.
           That's all and don't blame me for the
           problem.  (Doc. 84-3 at 15).

depositions and the videotape recordings of those depositions, and in the absence of any clear statement from counsel of evidence that would be presented at such a hearing, we are satisfied that we have before us what is relevant and necessary to a sound decision.

We will consider the plaintiff's motion to compel and for sanctions involving the depositions of defendant Kellar and of PHRC Executive Director Homer Floyd and the interrogatories to Mayor Reed and the responses to those interrogatories in the light of the Order of Judge Jones entered after a hearing where the plaintiff, the party seeking to conduct additional discovery, had the opportunity to provide a showing of the discovery that the plaintiff wanted to pursue. Judge Jones heard the parties positions and then ruled that further questioning of defendant Kellar in two areas (stated above) would be permitted, that a three hour deposition of Homer Floyd would be permitted, and that the plaintiff could propound up to five interrogatories to the defendants regarding Mayor Reed.

A number of Harrisburg police officers and employees had made statements to the Pennsylvania Human Relations Commission about defendant Kellar and about the Bureau of Police with the understanding that the identity of the person making the statement would not be publicized. The court had ruled that the identity of the persons making particular statements will not be discoverable in this case. At the outset of the August 6, 2009 Kellar deposition, there was an issue extant between counsel whether plaintiff's counsel's questions did or did not improperly call upon defendant Kellar to identify interviewees in the Human Relations Commissions inquiry.

Mr. Ostrowski said at the outset to defendant Kellar, "it looks like a Lyle Muldrow got contacted, contacted the PHRC about the review. Would that be?" (Kellar Deposition Transcript, page 2). When defendants' counsel objected, plaintiff's counsel said, "don't start playing your games already Robyn. This is ridiculous." *Id,* page 3. It was not ridiculous, given Judge Jones' Order. Although plaintiff's counsel's questions did not, in referring to Lyle Muldrow,

necessarily seek affirmation of the identity of a particular

interviewee as Muldrow, it was not unreasonable or a game for

defendants' attorney to raise that concern.  Counsel's

objection does not appear at all to have been a game.  But the

accusations of gamesmanship and of dishonesty continued and

intensified.  Plaintiff's counsel persisted with the

attribution of gamesmanship to defendants' counsel, unfairly

and unproductively.  Counsel for the plaintiff was not familiar

with Judge Jones' order, even though he had been present in

court on July 28, 2009 when it was entered.  After defendants'

attorney had accurately reiterated the Kellar deposition

limitations ordered by Judge Jones, plaintiff's counsel

responded, "[c]ounsel, you are playing a game.  You are

dishonest."  *Id,* page 6.  Defendants' attorney was not being

dishonest by any objective indication.  An accusation made by

one attorney to another of "playing a game" and of dishonesty

was not warranted.


     As the deposition went forward defendants' counsel

asserted again that the questions of the plaintiff's attorney

went beyond the scope of the areas that Judge Jones had

authorized. The plaintiff does not in his brief in support of his motion for sanctions even address this question of the propriety of the questions in relationship to Judge Jones' Order. (Doc. 84).

Judge Jones had authorized questioning of defendant Kellar in part about statements attributed to Kellar by the PHRC interviewees. The interviewees' statements made to the Pennsylvania Human Relations Commission in many instances are characterizations of persons and generalizations about persons; i.e., "[t]he chief is a problem affecting a lot of people in a very serious way. This guy is the worse chief I've seen in years." Kellar Deposition Transcript, page 18. These characterizations of other persons are not the same as statements said by interviewees to have been made by defendant Kellar. This distinction was asserted by the defendants' attorney. The plaintiff's attorney did not agree.

The plaintiff's attorney asked defendant Kellar whether he had heard "whispering and rumbling" that an identified other police officer is a racist. *Id,* page 15. An objection was

interposed by defendants' attorney. *Id.* The plaintiff's

attorney stated to the defendants' attorney:

> [n]ow what if I ask him a question that
> attributes a direct quote to him, but doesn't
> have the term nigger in it? Is that fair? I
> mean you tell me what the rules are here Robyn?
> Go on tell me? . . . Have you heard anybody
> say? Because here Robyn here, let me
> articulate where I'm going? Even though that
> doesn't say nigger or it doesn't say spic or it
> doesn't say cunt or any other word that you're
> looking for in there it says things that are
> affecting morale. In my view and I think in
> any reasonable person's view the racism affects
> morale. That's all I'm after here. I'm not
> after much more than that. You know its these
> things are said in the documents. I'm going
> through documents and asking questions. You
> know I don't know how much more reasonable I
> can be, but I do expect how much more
> unreasonable you can be. I apologize for the
> language, but hey it's in these documents.
> It's not my choice.

*Id,* page 18.


But the plaintiff's counsel had not asked defendant

Kellar about statements allegedly made by defendant Kellar.

Counsel's questions about what defendant Kellar had heard are

materially different from the permitted category of questions;

i.e., questions about statements allegedly made by defendant

Kellar. They are materially different both as to whether Judge

Jones had permitted them and as to the potential to lead to admissible evidence. Counsel had asked questions at page 15 that were not within the scope of Judge Jones' authorization. Counsel's intimation that defendants' counsel's objection had to do with the content of statements putatively attributed to defendant Kellar was an illogical and unwarranted change of subject. The questioning to defendant Kellar as to whether he had ever heard about poor police department morale and various instances of staff improprieties was not within the scope of Judge Jones' order, which was stated in terms of statements made by defendant Kellar. The objection of defendants' attorney was meritorious and sustainable, not dishonest or game playing.

We have carefully considered the brief of the plaintiff supporting his motion. (Doc. 84). It asserts that defendants' attorney was an obstructionist and dishonest at the deposition and that the court had specifically permitted the questions to which objections were made. We do not agree.

The plaintiff's brief makes the same assertion about counsel for the PHRC during the Floyd deposition on August 6, 2009. This deposition degenerated into hostile and insulting statements made to the deponent and to the deponent's attorney by the plaintiff's attorney. *See* Floyd Deposition Transcript. Pages 65-70, 82-87. The questions and the comments of the plaintiff's attorney during this deposition were not reasonably likely to lead to admissible evidence. The plaintiff's attorney accused the deponent's attorney of dishonesty without a basis for the accusation.

The plaintiff's motion and briefs do not make out a case for the court to permit additional depositions of either defendant Kellar or Mr. Floyd. The plaintiff's attorney during the second Kellar deposition did not understand what had been ordered by the court and had apparently not reviewed the order prior to the deposition. The plaintiff's attorney did not conduct the Kellar and the Floyd depositions in a reasonably professional manner.

In short, after a series of discovery disputes and a
hearing before Judge Jones, and after an order was entered by
Judge Jones limiting the re-deposition of defendant Kellar to
two specific areas, and after an accurate statement by
defendants' attorney of the two permitted areas, plaintiff's
counsel proceeded as though unconstrained by Judge Jones'
Order, castigated defendants' attorney for reminding him of the
limitations and now asks for sanctions.  Sanctions against
defendants or their attorney are clearly not warranted.  Nor is
another hearing.  Nor is further discovery.

We will address the responses (objections) to the
interrogatories to the defendants regarding Mayor Reed.  The
questions in the Mayor Reed interrogatories are not consistent
with the position taken by plaintiff's counsel during the July
28, 2009 hearing concerning the scope and purpose of the
focused and specific interrogatories (Doc. 66, p. 39) that
counsel was permitted to present to the defendants regarding
Mayor Reed.  The court had permitted five focused

interrogatories.  The plaintiff propounded seven[3] very broad

scoped interrogatoriesl.  *See* Doc. 85-4 at 64-69.  These do not

adhere to the description of specific and narrow

interrogatories authorized by Judge Jones.  There are not

grounds to compel answers to these interrogatories.


The remaining issue is the plaintiff's motion for an

order compelling the deposition of Mayor Stephen Reed.  Judge

Jones had permitted interrogatories to be presented to the

defendants concerning Mayor Reed as part of the resolution of

issues that were the subject of the July 28, 2009 hearing.

Plaintiff's counsel did not present limited and focused

interrogatories for responses from Mayor Reed.  The court's

Order of February 4, 2009 had prohibited the deposition of

Mayor Reed.  After that, plaintiff's counsel informed the court

that there was no longer an interest in deposing the Mayor on

the plaintiff's part.  It is not clear to us what it was that

---

3.  Local Rule 33.3 provides: "Interrogatories inquiring as to the
names and locations of witnesses or the existence, location and
custodian of documents or physical evidence each shall be
construed as one interrogatory.  All other interrogatories,
including subdivisions of one numbered interrogatory, shall be
construed as separate interrogatories."

revived interest on the plaintiff's part in deposing Mayor

Reed.  But the presentation made on the plaintiff's behalf at

the July 28, 2009 hearing did not demonstrate a sufficient

basis for Judge Jones to order the deposition of Mayor Reed.

The July 16, 2009 motion to compel will be denied.

**Order**

    For the foregoing reasons, **IT IS ORDERED** that the

July 16, 2009 motion to compel discovery (Doc. 58) and the

September 18, 2009 motion to compel discovery and for sanctions

(Doc. 73) are **DENIED**.

    **IT IS FURTHER ORDERED** that discovery is closed.  A

report and recommendation to Judge Jones to set a dispositive

motion deadline, a pretrial conference date, a trial date and

other appropriate case management dates will be filed also on this date.

                                        **/s/ J. Andrew Smyser**
                                        J. Andrew Smyser
                                        Magistrate Judge

Dated:  December 18, 2009.